# THE STATE v. W. C. FERRELL, Appellant.

### Division Two, March 14, 1911.*

1. **EVIDENCE: Shooting at Witness at Another Time: Motive.** The theory of the State was that defendant shot at Grider, towards whom he entertained a bitter hatred, missed him and struck deceased, who stood close by Grider. There was evidence that defendant intended to kill Grider at the first opportunity. *Held*, that Grider's testimony that some one shot at him from the timber near his house a month or so prior to the homicide, the bullet passing through his hat, and that immediately after the shot he saw defendant come out of the timber with something in his hand that looked like a gun, was properly admitted to show malice on the part of defendant towards Grider; and even if improperly admitted, it was harmless in view of the facts.

2. **REMARKS OF COUNSEL: Comment on Exhibits.** A rifle and bullet had been introduced by defendant, and in the course of his argument to the jury the prosecuting attorney picked up the rifle and bullet and offered to show the jury that the bullet would not fit in the muzzle of the rifle. To this defendant's counsel objected, and the court said, "That is improper," and thereupon the prosecuting attorney said, "They scringe from that." *Held,* that the argument was legitimate comment on the evidence, and the only error was against the State in not permitting it.

3. ————: **Failure of Defendant to Explain: Insufficient Rebuke.** Although defendant has been put upon the witness stand, the prosecuting attorney should not comment upon his failure to testify concerning damaging features of the case, nor bear down on his failure to explain them. And when such improper comment is made, the court, upon objection, should promptly rebuke the prosecutor and admonish him to refrain from such improper argument; a mere announcement that the comment is not allowable is not sufficient. The argument of the attorneys for the State, to the effect that defendant and his conspirators had failed to explain certain damaging matters within thir peculiar knowledge, the objections thereto, and the court's rulings thereon, are set out, and it is *held* that reversible error was committed.

Appeal from Callaway Circuit Court.—*Hon. A. W. Walker*, Special Judge.

REVERSED AND REMANDED.

*Harris & Hay* for appellant.

. (1)   The evidence that William Grider was shot at prior to June 17, 1909, was clearly inadmissible and prejudicial, since it.was not shown by credible testimony that appellant was in any way responsible for the firing of the shot.   All that the testimony discloses is that a shot was fired in the vicinity of Grider's home. There is not a syllable of testimony that tends to fasten responsibility for such act upon appellant.   It is merely shown that it was possible for him to have fired the shot.   By this testimony Grider was permitted to vent his spleen on appellant, and, at the very inception of the case, to put appellant under the burden of the suspicion naturally produced in the minds of the jury, as to an act for which he was not being tried and the charge as to which he was not prepared to meet.   (2)   The prosecuting attorney's reference to and comment upon the failure of appellant and his co-defendants to deny the testimony of witness Dunn as to the existence of a conspiracy to harm Grider, followed by no proper rebuke by the court, was clearly reversible error.   State v. Snyder, 182 Mo. 523; State v. Weaver, 165 Mo. 1; State v. Ruck, 194 Mo. 441; State v. Newcombe, 220 Mo. 67; R. S. 1909, sec. 5243.   (3) The reference of the prosecuting attorney and his assistant to the appellant's failure to explain the whereabouts of the gun, followed by the statement of said attorneys that it was the duty of the defendant to explain its absence to the satisfaction of the jury, constituted palpable and flagrant error.   R. S. 1909, sec. 5243; State v. Mahly, 68 Mo. 319; State v. Moxley, 102 Mo. 393; State v. Graves, 95 Mo. 510; State v. Elmer, 115 Mo. 401.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) Appellant objected to the witness Grider stating that the defendants named in the indictment made threats against his life previous to the shooting. Grider was the witness who was sitting on the horse and was the person shot at, the bullet striking the deceased. Appellant objected because he would not be bound by any threats that the other co-defendants had made. The State, by this evidence, undertook to prove a conspiracy, and this was competent. State v. Darling, 216 Mo. 459; 1 Wharton's Crim. Law (8 Ed.), sec. 220; Williams v. State, 81 Ala. 1; 1 Bishop's Crim. Law (7 Ed.) 637; State v. Shelledy, 8 Clarke (Ia.) 477; Lamb v. People, 96 Ill. 73. (2) The argument was the summing up of the testimony introduced in the case. An attorney arguing the evidence is not compelled to use the language of the witnesses, but has the right to state the facts introduced in evidence and draw his deductions therefrom. The judge rebuked him when he was not discussing the evidence, but refused to do so when he was within the evidence introduced, and when this argument is considered in connection with the evidence, the court will find that no reversible error occurs in the case on this score. State v. McMullen, 191 Mo. 174; State v. Evans, 124 Mo. 397; State v. Kaiser, 130 Mo. 436; State v. Barrington, 198 Mo. 92; State v. Sublett, 191 Mo. 174; State v. Emery, 79 Mo. 463; State v. Allen, 174 Mo. 698; State v. Hyland, 144 Mo. 313; State v. Summer, 143 Mo. 234; State v. Runshon, 133 Mo. 59.

BROWN, J.—Defendant was convicted of murder in the second degree for the alleged killing of one William Moore, in Callaway county, on June 17, 1909. From a judgment sentencing him to the penitentiary for ten years he appeals to this court.

W. C. Ferrell (the defendant), J. F. Liggett, J. L. Dunn, Mollie Liggett and Charles Ferrell were jointly charged by indictment with murder in the first degree; and the defendant having secured a severance, was separately tried on March 28, 1910. At the conclusion of the evidence the State elected to abandon the charge of murder in the first degree and ask only for a conviction of murder in the second degree.

The evidence on the part of the State tended to prove that one William M. Grider, who lived near defendant in Callaway county, started on horseback to Jefferson City, and after he had passed 1670 feet beyond defendant's house, met the deceased (Moore) walking along the public road. Grider stopped to talk with deceased, when a shot was fired from the direction of the defendant's house, and the bullet which produced the tragedy first struck Grider's horse and then passed into the body of Moore, producing his death within an hour.

The evidence does not indicate that any enmity existed between defendant Ferrell and the deceased, and the theory of the State is that as deceased was standing behind Grider's horse and the view somewhat obstructed, the defendant did not see deceased, but fired the fatal shot intending to kill Grider, against whom he harbored intense malice.

The State's evidence also tended to prove that defendant came to Jefferson City on May 22, 1909, and purchased a Springfield army rifle, caliber 45-70 and a box containing six cartridges, from one Lohman, a merchant. After Moore was killed, the cartridge box was found in defendant's house, but the rifle was not found; and upon being arrested, defendant told the sheriff he had bought the rifle for one Kesser, who was going to Arkansas. At the trial a Springfield rifle of the same make as the one purchased by defendant was introduced, likewise the bullet which produced the death of Moore and several other bullets and shells

alleged to be of the varieties used in a Springfield army rifle, though it was contended by defendant that the bullet which killed deceased and lodged in his clothing was much smaller in size than those usually fired from a 45-70 caliber Springfield rifle.

All of defendant's assignments of error pertain to the admission of evidence and improper arguments of the prosecuting attorney and his assistant; and such additional points in the evidence as are necessary for a full understanding of these matters will be noted in connection with our rulings on the alleged errors complained of.

The defendant contends that the court committed reversible error in permitting the witness William Grider to testify that some one shot at him from the timber near his house in the month of May, 1909, the bullet passing through the top of his buggy. This testimony was introduced to show malice on the part of the defendant toward the witness Grider. Grider testified that immediately after the shot was fired he saw the defendant come out of the timber with something in his hand which looked like a gun. We think this evidence was properly admitted, and even if it had been improperly admitted, it was entirely harmless as applied to the facts in this case. Grider testified to having been shot at by defendant some years before, and there was abundance of evidence that defendant intended to kill the witness Grider at the first favorable opportunity.

Defendant's second assignment of error is that during his closing argument the prosecuting attorney picked up the rifle and a bullet which had been introduced by defendant, and offered to show the jury that the bullet would not fit in the muzzle of the rifle. Upon objection of the defendant, the court said, "That is improper;" whereupon, the prosecuting attorney remarked, "They scringe from that." The defendant has no just ground of complaint at this part of the ar-

gument. The rifle and bullet had been introduced by defendant and the prosecuting attorney had the right to comment upon them, and convince the jury, if he could do so, that they sustained his theory of the case. The only error here was against the State in not permitting the prosecuting attorney to make to the jury a legitimate argument concerning the gun and bullet which the defendant had introduced in evidence.

Defendant also assigns as error the action of the prosecuting attorney and his assistant in commenting upon the failure of the defendant and some of the parties jointly indicted with him, to go upon the stand and deny certain incriminating evidence introduced by the State. Defendant was sworn and testified that he did not fire the shot which killed the deceased, but made no explanation of many facts which pointed to his guilt. John L. Dunn testified on behalf of the State that he and the other parties jointly indicted with defendant Ferrell were in a conspiracy to kill the witness Grider. J. L. Liggett, jointly indicted with the defendant, testified for the defendant, but Mollie Liggett and Charles Ferrell were not sworn at all.

In his opening argument the assistant prosecuting attorney said: "Gentlemen, there that box stands and confronts him when he says he never carried that big gun home. You all know you must come to the conclusion—you can reach no other—that when he carried that box home he carried the cartridges, and he didn't carry the cartridges unless he carried the gun, for he would have no use for the cartridges. They all went together. Box, cartridges and gun all went to Ferrell's house. Where the gun is, I know not. He alone can explain to you."

To these remarks defendant objected, and the court said, "I think it is in the evidence; that is argument." The defendant excepted.

In the closing argument of the prosecuting attorney, he said: "These gentlemen say you cannot pay

any attention to Dunn's testimony. Who has contradicted Dunn? Who has gone upon the stand and said there was no conspiracy? Who did Dunn say was in that conspiracy? He was in it. W. C. Ferrell was in it. Liggett was in it. Liggett's wife was in it. Charlie Ferrell was in it. Who has denied that there was a conspiracy? Nobody but old man Liggett.''

Upon objection by the defendant's attorney, the court said, ''I think no comments are allowable on the defendant's failure to testify. The jury will be the judges of that.'' The defendant again excepted.

The prosecuting attorney during his argument further said: ''Now, what has become of that gun? Where is the gun? these gentlemen ask. Let them explain it. We caught him in possession of a gun that was fired of the same caliber as the bullet that was in Mr. Moore. Now, what did he do with it? It is his duty to explain the possession of that gun to the satisfaction of this jury or his neck is in jeopardy.''

The defendant's attorney objected to the argument as being improper comment upon the defendant's failure to testify; and the court said, ''Yes, sir.'' To the failure of the court to properly rebuke counsel for the State, the defendant saved his exception.

In the further progress of his argument, the prosecuting attorney said: ''What has he done? Where is it? We show that there had been rain the night before and a man making tracks similar to his and his little dog had gone down to the spring near the creek. Now I don't know whether he put the gun in the spring or put it in the creek or put it in the Missouri river; I don't know a thing about that; but if we did find these tracks going down to the spring as testified by these witnesses, it is for him to explain where he put it.''

Counsel again objected to these remarks, whereupon the court said, ''There should be no comment on defendant's failure to testify on any point.'' To the

failure of the court to properly rebuke the prosecuting attorney, defendant saved his exception.

We are of the opinion that the foregoing remarks of the prosecuting attorney and his assistant were not only improper, but in a case like the one at bar, based entirely upon circumstantial evidence, were highly prejudicial to the defendant. We are aware that where a defendant has been upon the witness stand and has failed to deny evidence which strongly tends to establish his guilt, there is a great temptation for prosecuting officers to directly or indirectly comment upon the failure of the defendant to testify to facts peculiarly within his own knowledge. However, in their commendable efforts to enforce the law and protect the lives of citizens, prosecuting officers should not allow their zeal to carry them to the point of becoming law-breakers themselves by violating the statute which prohibits comment upon the failure of the defendant or persons indicted with him to testify in their own behalf. [R. S. 1909, sec. 5243; State v. Newcomb, 220 Mo. 1. c. 67; State v. Weaver, 165 Mo. 1; State v. Graves, 95 Mo. 510; State v. James, 216 Mo. 394.]

When an improper comment on the defendant's silence is made by a prosecuting officer, and the court upon objection promptly rebukes the prosecutor and admonishes him to refrain from such improper argument ordinarily the error will be cured, but in this case there was no sufficient effort by the court to prevent the improper argument of the prosecuting attorney and his assistant, and said attorneys over the objections of the defendant exceeded the legitimate bounds of argument at four different times. For their error in doing so and for the failure of the court to compel them to refrain from commenting upon the defendant's silence, we are forced to reverse the judgment and remand the cause.

*Kennish, P. J.,* and *Ferriss, J.,* concur.