Argued September 16; affirmed September 29; rehearing
denied November 23, 1937

## STATE *v.* JUSTICE

(71 P. (2d) 798)

*C. W. Robison,* of Portland (Leland B. Shaw, of Portland, on the brief), for appellant.

*James R. Bain,* District Attorney, and *T. B. Handley,* Deputy District Attorney, both of Portland (Joe P. Price, of Portland, on the brief), for the state.

KELLY, J. Defendant, Jack Justice, and Leo Hall were indicted jointly. By the indictment said defendants, Leo Hall and Jack Justice, were accused of the crime of murder in the first degree alleged to have been committed on the 20th day of November, A. D. 1933, in Multnomah county, Oregon, by killing one W. Frank Akin.

When arraigned, defendant Jack Justice stood mute and refused to plead, whereupon a plea of not guilty was entered.

Defendant Justice alone was put upon trial. At the time of the trial, Hall, having been convicted of murder committed in the state of Washington, was awaiting execution there.

Defendant was not personally present when Akin was killed; but the state's position is that defendant induced Hall to commit the crime in consideration of the payment of $1,200.

There are three assignments of error. By the first, it is urged that the court committed error in permitting the introduction of evidence of an offense not charged in the indictment. One Lawrence Patrick Paulos testified that in March, 1933, he, Paulos, assaulted the deceased, Akin, at the instance of defendant, Justice, who promised to secure for him $200 as remuneration for beating the deceased up. The deceased proved too much for Paulos and the job was disconcerting to Paulos and unsatisfactory to those who desired to have Akin worsted.

In the case of *Thiede v. Territory of Utah*, 159 U. S. 510 (40 L. Ed. 237, 16 S. Ct. 62), a similar question was presented. There the defendant was on trial for the murder of his wife. There was evidence of ill treatment by the defendant of his wife for a number of years. We find this statement in the opinion:

"Now the most of the testimony objected to was introduced for the purpose of showing ill treatment by defendant of deceased, and a state of bitter feeling between them. This, of course, bears on the question of motive, and tends to rebut the presumed improbability of a husband murdering his wife."

The question is treated thus in the Encyclopaedia of Evidence under the subject Homicide:

"(1.) Generally—The accused's hostile acts and conduct toward the deceased or assaulted person, both before and after the assault in question, are competent evidence of his intent, malice and premeditation, if not too remote. (2.) Remoteness,—No general rule can be laid down as to the length of time intervening between the hostile conduct and the final assault which will serve to exclude such evidence for remoteness." 6 Enc. of Evid. 627, 628.

The cases there cited are: *Anderson v. State*, 79 Ala. 5; *Ross v. State*, 62 Ala. 224; *Austin v. State*, 14 Ark. 555; *Melton v. State*, 43 Ark. 367; *State v. Pike*, 65 Me. 111; *Williams v. State*, 64 Md. 384 (1 Atl. 887); *People v. Jones*, 99 N. Y. 667 (2 N. E. 49); *State v. Ellis*, 101 N. C. 765 (7 S. E. 704, 9 Am. St. Rep. 49); *Burnett v. State*, 82 Tenn. 439; *Reed v. Commonwealth*, 98 Va. 817 (36 S. E. 399); *State v. Pennington*, 124 Mo. 388 (27 S. W. 1106); *Hamilton v. State*, 41 Tex. Crim. 644 (56 S. W. 926).

The time between the former assaults and crime charged varies in the different cases above cited from

a few minutes or a few hours to a period of eleven months.

In *Hamilton v. State,* supra, a year had elapsed; in *People v. Jones,* supra, eleven months; while in *Melton v. State,* supra, the prior assault was more than a week before the crime charged.

Other cases holding that testimony is admissible of prior assaults by defendant upon deceased are: *State v. Grayson,* 126 Or. 560, 569 (270 P. 404); *Commonwealth v. Ballon,* 229 Pa. 323 (78 Atl. 831); *Cole v. State,* 21 Ala. App. 601 (110 So. 913); *Owen v. State,* 52 Tex. Cr. Rep. 65 (105 S. W. 513); *Powdrill v. State,* 69 Tex. Cr. Rep. 340 (155 S. W. 231); *People v. Mammilato,* 168 Cal. 207 (142 P. 58); *People v. Palassou,* 14 Cal. App. 123 (111 P. 109); *Smallwood v. State,* 9 Ga. App. 300 (70 S. E. 1124); *State v. Ferrell,* 233 Mo. 452 (136 S. W. 709); *Holder v. State,* 119 Tenn. 178 (104 S. W. 225); *Stanton v. State,* 70 Tex. Cr. Rep. 519 (158 S. W. 994); *State v. Lewis,* 80 Wash. 532 (141 P. 1025); *People v. Chaves,* 122 Cal. 134 (54 P. 596); *Roberts v. State,* 123 Ga. 146 (51 S. E. 374); *Green v. State,* 125 Ga. 742 (54 S. E. 724); *Henry v. People,* 198 Ill. 162 (65 N. E. 120); *State v. Callaway,* 154 Mo. 91 (55 S. W. 444); *Jahnke v. State,* 68 Neb. 154 (94 N. W. 158), (reversed on rehearing but not upon the question here involved, 68 Neb. 181 (104 N. W. 154)); *Miera v. Territory,* 13 N. M. 192 (81 P. 586); *Medina v. State* (Tex. Cr. App.), 49 S. W. 380; *Spears v. State,* 41 Tex. Cr. Rep. 527 (56 S. W. 347); *Hamilton v. State,* supra, (intervening reconciliation does not make it too remote); *State v. Bean,* 77 Vt. 384 (60 Atl. 807); *Anderson v. State,* 83 Tex. Cr. Rep. 276 (202 S. W. 953); *Hughes v. State,* 83 Tex. Cr. Rep. 550 (204 S. W. 640); *Beckworth v. State,* 183 Ga. 871 (190 S. E. 184); *State v. Horne,* 209 N. C. 725 (184 S. E. 470); *People v.*

*Pivaroff*, 138 Cal. App. 625 (33 P. (2d) 44); *Steward v. State*, 127 Tex. Cr. Rep. 63 (75 S. W. (2d) 113); *State v. Holmes*, 171 S. C. 8 (171 S. E. 440); *Sanders v. Commonwealth*, 244 Ky. 77 (50 S. W. (2d) 37); *Warner v. Commonwealth*, 241 Ky. 118 (43 S. W. (2d) 524); *McGraw v. State*, 184 Ark. 342 (42 S. W. (2d) 373); *Gray v. The State*, 63 Ala. 66; *Painter v. People*, 147 Ill. 444 (35 N. E. 64); *Commonwealth v. Campbell*, 89 Mass. (7 Allen) 541 (83 Am. Dec. 705); *Walters v. The People*, 6 Parker Cr. Rep. (N. Y.) 15; *Phillips v. State*, 62 Ark. 119 (34 S. W. 539); *Lawrence v. State*, 84 Ala. 424 (5 So. 33); *State v. Merkley*, 74 Iowa 695 (39 N. W. 111); *State v. Patza*, 3 La. Ann. 512; *State v. Nugent*, 71 Mo. 136; *State v. Brooks*, 1 Ohio Dec. Reprint 407 (9 West. Law J. 109); *Nicholas v. Commonwealth*, 91 Va. 741 (21 S. E. 364).

In *People v. Bolton*, 215 Cal. 12 (292 P. 693 and 8 P. (2d) 116), and *Wever v. State*, 121 Neb. 816 (238 N. W. 736), it is held that remoteness affects weight and not admissibility.

*People v. Flanigan*, 42 App. Div. 318 (59 N. Y. S. 101), and *Albricht v. The State*, 6 Wis. 74, do not involve a charge of murder and hence are not in point here.

It will be noted that in *State v. Grayson*, supra, the prior assault occurred three months before the homicide.

In *State v. Ryan*, 56 Or. 524 (108 P. 1009), testimony of an assault upon a third person, which occurred two hours before the homicide, was held to be admissible, the third person being the one defendant attempted to kill when he committed the homicide.

In *Anderson v. State,* 83 Tex. Cr. Rep. 276 (202 S. W. 953), the prior assault occurred five years before the crime charged; in *Warner v. Commonwealth*, supra,

ten months; in *Owen v. State,* supra, one year; in *Powdrill v. State,* supra, two or three years; in *Miera v. Territory,* supra, three years; in *Medina v. State,* supra, seven months; and in *Spears v. State,* supra, five years. The facts concerning the prior assault in *Commonwealth v. Ballon,* supra, are quite similar to those reflected in the record of the instant case. In the Ballon case only about three weeks intervened between the prior attempt against deceased and the homicide; but, as in the case at bar, the prior attempt was made by a coconspirator and not by the defendant in person.

The latest utterance of this court with reference to the exceptions to the general rule, that evidence of other crimes than the one charged is inadmissible, is to be found in *State v. Gillis,* 154 Or. 232, 237 (59 P. (2d) 679). There, the exceptions stated in the leading case of *People v. Molineux,* 168 N. Y. 264 (61 N. E. 286, 62 L. R. A. 193), are set forth.

In the Molineux case, five exceptions are enumerated, namely, when such testimony tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial. Clearly, the testimony in the case at bar, the admission of which forms the basis of defendant's first assignment of error, comes within the second and fifth exceptions last above mentioned.

The learned trial judge was careful to instruct the jury that defendant was not on trial for the alleged assault upon deceased by Paulos, and that the only purpose for which the jury could consider such evi-

dence is for the purpose of showing the feeling of animosity that this defendant had toward deceased.

No error was committed in receiving such testimony.

■ The second assignment of error is based upon the court's action in permitting one Peggy Paulos to testify to alleged statements of Leo Hall made after the commission of the crime charged in the indictment.

These alleged statements were said by the witness to have been related to defendant, Justice, whereupon, according to said witness, defendant, Justice, made admissions against his interest. In other words, the witness related an alleged conversation which she claims to have had with the defendant upon trial. One of the admissions against interest alleged to have been made, when certain alleged statements of Hall were made to defendant, was "The damned fool is talking too much". Another was to the effect that Hall acted so quickly that defendant, Justice, did not have time to return to Seattle and establish an alibi.

We know of no rule of law excluding such testimony. Counsel for defendant cites none.

■ Defendant's counsel treats the record as disclosing testimony by Mrs. Paulos wherein she related to the jury statements and declarations alleged to have been made by Leo Hall, after the death of Akin, without connecting defendant with such statements. He argues that the conspiracy alleged by the state to have existed between Hall and Justice terminated at the death of Akin, and any statement by Hall thereafter would not be one made by a coconspirator.

We cannot agree with defendant's counsel that the record discloses any statement by Hall except those which the witness said she related to Justice and which

caused Justice to make the said admissions against interest.

The second assignment of error is without merit.

The third assignment urges error in the court's failure to direct a verdict of not guilty as to the defendant on trial.

■ We have before us only parts of the testimony. The entire testimony is not before us. Without the complete record, we are unable to say that there was no competent evidence supporting the verdict. The presumption is that there was such testimony.

For these reasons the judgment of the circuit court is affirmed.

BELT and LUSK, JJ., did not participate in this opinion.